JOHN D. OLCOTT v. LEVERETT C. CRITTENDEN AND JAMES H. CANFIELD.

*Mortgage—Foreclosure—Equity—Assignment of mortgage and note as security—Payment.*

1. A statutory foreclosure is not adapted to cases where there are conflicting equities, which can only be worked out and protected in a court of chancery.

    So *held,* where the assignee of a mortgage, which, with the accompanying note, had been assigned as *security* by the mortgagee, foreclosed the mortgage by advertisement, which foreclosure was held *void.*

2. Where a purchaser of land takes the same subject to a mortgage held by a third party as security for the payment of a smaller debt due from the mortgagee, which he purchases from the assignee, and takes an assignment of the mortgage, with knowledge of the rights of the assignee therein, he will hold it in trust for the owner as to the balance due above the debt it was assigned to secure, for which balance the mortgage will remain a lien on the land.

Appeal from Berrien. (Smith, J.) Argued January 5,. 1888. Decided January 19, 1888.

Bill to set aside a foreclosure at law and declare a mortgage fully paid, etc. Defendents appeal. Decree affirmed in part and reversed in part, and a new decree entered, and case remanded. The facts are stated in the opinion.

*O. W. Coolidge* and *E. L. Hamilton,* for complainant.

*Edward Bacon,* for defendants.

CHAMPLIN, J. On the twenty-fourth day of February. 1872, Philenda Case was the owner of a parcel of land situated in the village of Benton Harbor, Michigan, containing about one acre. On that day she executed a mortgage thereon to secure two promissory notes, one of $400, and the other of $500, payable, respectively, April 1, 1872, and November 1, 1875, both bearing interest at 10 per cent. The notes and mortgage were payable to George K. Hopkins. The note due April 1, 1872, was paid at maturity.

On February 6, 1875, George K. Hopkins made his promissory note, payable to the order of Parnell Crittenden, for $450, due November 1, 1875, with interest at 10 per cent. On the twentieth day of March, 1875, he assigned the unpaid note of $500, and the mortgage securing the same, to Parnell Crittenden, to secure the payment of his note to her. The assignment contained this condition, namely:

"The condition of this assignment is such that if the said George K. Hopkins shall pay to the said Parnell Crittenden the said four hundred and fifty dollars, and the interest thereon, on the first day of November, A. D. 1875, according to the conditions of a certain promissory note then due,. assignment to be null and void, otherwise of force."

The mortgage was recorded February 8, 1875, and the assignment was duly recorded in the office of the register of

deeds of Berrien county within a couple of days after its execution.

On the twenty-fifth day of November, 1875, complainant purchased the mortgaged premises from Philenda Case, subject to a mortgage thereon for $500, and interest thereon, and, subject to that mortgage, he allowed said Philenda Case, in an exchange of land in Ohio therefor, $300, and in that way paid her that amount for her right, title, and interest to the Benton Harbor land, she warranting the title against everything except said mortgage. Complainant went into possession of the premises, and still owns and possesses the same. As between complainant and Mrs. Case, he never considered that he had any recourse against her, if he was obliged to, or did, pay the mortgage debt to remove the lien of the mortgage upon the land. He merely purchased Mrs. Case's right, title, and interest in the property, subject to the mortgage; or, in other words, he purchased her equity of redemption without assuming or agreeing to pay the mortgage debt. If he could make anything by paying it, he could do so; but, if the land was not worth enough to pay it, he could let the lien holder take the land. Such was the testimony of complainant, given on the hearing of this cause.

On the tenth day of March, 1876, the mortgage not having been paid, complainant, Olcott, applied to Parnell Crittenden, and purchased from her the Hopkins note of $450, which, with the interest to that time, amounted to $499.75; and she delivered the note, and executed an assignment of the Case mortgage, to Olcott, and at the same time delivered to him the note for $500, and the mortgage which secured its payment, executed by Philenda Case, and he has since held them in his possession. At the time of this transaction, complainant, Olcott, knew that Mrs. Crittenden held the Case note and mortgage as security for the payment of the Hopkins note to her.

On May 12, 1876, Hopkins, by a written assignment, trans-ferred all of his right, title, and interest in the Case mort-gage, and the $500 note secured thereby, to Leverett C. Crit-tenden, and covenanted that there was at least $25 due thereon. On the same day, Leverett C. Crittenden, by a written assignment, transferred the right, title, and interest which he acquired to James H. Canfield, covenanting therein that there was at least the sum of $25 due.

On September 13, 1876, Canfield commenced to foreclose the mortgage by advertisement. In his notice of sale he states the amount due and unpaid upon the mortgage to be $145.78. The premises were sold under the foreclosure pro-ceedings, and bid off by James H. Canfield for $204.27, and a deed was executed to him by the sheriff bearing date December 8, 1876, and was filed, properly indorsed, in the office of the register of deeds for Berrien county on Decem-ber 9, 1876.

On the sixth day of December, 1877, two days before the deed to Canfield would become operative to bar all equity of redemption, the complainant, Olcott, filed his bill of com-plaint in this cause, charging that the proceedings of Can-field to foreclose the Case mortgage were null and void; that neither he, nor Crittenden, nor Hopkins had any legal title to the note and mortgage after the assignment thereof to Parnell Crittenden; and he further charges that neither of said persons—

" Have any equitable interest, right, or title in said mort-gage, but that the same has been fully paid, satisfied, and discharged by your orator."

And he charges, further, that the sheriff's deed and cer-tificate constitute a cloud upon his title to said land, and pre-vent him from making a sale thereof. He prays that the sale to Canfield may be declared null and void, and be set aside, as also the sheriff's certificate of sale, and that said mortgage and notes of Philenda Case to George K. Hop-

kins may be adjudged to be fully paid and satisfied, and for such other and further relief as shall to the court seem proper.

The defendants answered, setting up that when Olcott, under the circumstances of his purchase of the fee from Philenda Case, paid the $499.75, it was a payment *pro tanto* of the Hopkins mortgage; that thereby the mortgage of the Case note and mortgage to Parnell Crittenden was redeemed and paid, and said George K. Hopkins thereby became the legal owner of the said Case note and mortgage, and all sums remaining due thereon, without any lien or claim against the same. They also claim that, if the statutory foreclosure should be held void, they have a lien, under and by virtue of the Case mortgage, for the amount secured over and above the amount due on the Hopkins note to Parnell Crittenden, which Leverett C. Crittenden, the owner thereof, is entitled to enforce; and that he has paid the taxes on the premises one year since the complainant bought; and he prays relief in the same manner and to the same extent as if he had filed a cross-bill to foreclose the Case mortgage for the amount due him.

The attempted foreclosure of the mortgage by advertisement was a nullity. The statutory foreclosure is not adapted to cases where there are conflicting equities, which can only be worked out and protected in a court of chancery. In this case the legal title to the note, and the record title to the mortgage foreclosed, had passed out of Hopkins by his assignment to Parnell Crittenden, and the delivery of the original note to her. The record also showed that Parnell Crittenden had assigned to the complainant, Olcott. Hopkins could not, by another assignment of the same note and mortgage to Leverett C. Crittenden, so vest the legal title to the note and mortgage in him as to authorize him to proceed and foreclose by advertisement. To permit proceedings of this kind would injuriously affect the rights of the owner of the equity of

redemption, not only in rendering it uncertain to whom the redemption money should be paid, but, in case of foreclosure sale, the value of the equity would be greatly depreciated, occasioned by the uncertainty of the ownership of the security, and his right to foreclose, and the consequences would be a sale at a sacrifice. The foreclosure was unauthorized, and the sheriff's certificate and deed thereunder must be decreed to be void and of no effect.

The next question that arises is, what effect should be given to the purchase of the Hopkins note by complainant of Parnell Crittenden, and the assignment to him of the Case note and mortgage, which was held by her as security for the payment of the Hopkins note? The claim of the complainant in his bill of complaint is that the Case note and mortgage has been fully paid, satisfied, and discharged by him. This claim must rest upon the theory that, having purchased the fee subject to such mortgage, he had a right, if he thought it best for his interests, to pay off the incumbrance, and free his land from the lien thereof, and that the purchase and payment of the Hopkins note should be applied to the extinguishment of the lien ; and by taking the assignment of the Case mortgage the legal and equitable title became merged in him, and the lien created by the mortgage extinguished.

When we consider the circumstances under which the complainant purchased the property, having bought it subject to the Case mortgage, and the amount thereof constituting a portion of the consideration received by Mrs. Case; and when we consider, also, the testimony attending the payment of the money to Parnell Crittenden by complainant, when he took the assignment of the mortgage to himself,—we are led to the conclusion that it was the intention of complainant, Olcott, that the amount paid to Mrs. Crittenden should apply upon the Case mortgage towards the extinguishment of the lien created by the Case mortgage. Indeed, there does not

appear to be any other good reason why he should apply to Mrs. Crittenden to obtain an assignment, unless it was to pay off the Case mortgage, and obtain a removal of the lien.

It appears that Hopkins had failed in business, and was insolvent, and that the complainant knew, when he paid to Mrs. Crittenden the amount due her from Hopkins, that she only held the assignment of the Case mortgage as security, and that she was not the absolute owner thereof. Complainant in that transaction also recognized a right and interest in Hopkins in the Case mortgage, and as being entitled to the surplus of the Case note over and above the amount for which Mrs. Crittenden held it as security. The amount, therefore, paid by him to Mrs. Crittenden can be held to discharge the lien of the Case mortgage only *pro tanto*. He could not, without paying the whole mortgage debt to Mrs. Crittenden, discharge the entire lien. Had he paid the whole amount of the mortgage debt to Mrs. Crittenden, she would, after applying sufficient to pay the debt from Hopkins to her, have held the balance in trust for Hopkins.

Acceding to the complainant's claim as to the application of the moneys paid to Mrs. Crittenden, and that it should apply to the payment of the mortgage debt upon his land, the question remains whether his claim is true that the whole mortgage debt was paid thereby and the mortgage dis: charged. We think the payment discharged the lien of the mortgage to the extent of the payment made, and no further. The result is that he holds the Case mortgage in trust for Leverett C. Crittenden, who now appears to be the one entitled to receive the balance due upon it; and, to the amount of such balance, it remains a lien upon the land, which defendant Leverett C. Crittenden has a right to have enforced in equity. This may be done in the present suit.

The court below, contrary to the complainant's claim, and contrary, as we think, to the testimony by which the equi-

table rights of the parties are to be governed, decreed that there was due to complainant upon the Case mortgage $1,001.25, and that if Leverett Crittenden should tender and pay complainant, within 60 days, said sum, with costs of suit, then complainant should re-assign said mortgage, and the notes accompanying the same, and he should have the right to foreclose the same; but, if Crittenden did not make such payment and tender, then the complainant might proceed to have the land sold by and under the dictation of a circuit court commissioner of the county of Berrien, such sale to be made and conducted in the same manner as sales under foreclosure of mortgages in courts of chancery, and that the commissioner should execute a deed to the purchaser. No direction is made for the distribution or application of the moneys which shall have been received upon the sale, and none is directed to be paid over to Crittenden. While the decree recognizes that he has a right to redeem from the mortgage of the mortgage, it recognizes no right in him to any interest in the mortgage beyond the debt to complainant.

This decree is affirmed so far as it declares the statutory foreclosure invalid, and it must be reversed as to the residue, and a decree will be entered here ascertaining the amount due to Leverett Crittenden upon the Case note and mortgage, and the taxes paid by him, and fixing the time for the payment thereof by the owner of the equity of redemption in 60 days from the entering of the decree in this Court, and, in default thereof, for a foreclosure and sale of the mortgaged premises to satisfy such decree in the usual manner of foreclosure sales in chancery.

After the decree is entered in this Court, the record will be remanded to the circuit court for the county of Berrien, in chancery, for execution. Neither party will recover costs in this case.

SHERWOOD, C. J., MORSE and LONG, JJ., concurred. CAMPBELL, J., did not sit.